Smith & English, *Partners*, v. Board of Education.

---

No. 24,907.

T. C. SMITH and HAROLD T. ENGLISH, Partners, etc., *Appellants*, v. THE BOARD OF EDUCATION OF THE CITY OF LIBERAL, *Appellee*.

SYLLABUS BY THE COURT.

1. CONTRACT WITH PARTNERSHIP—*Plans and Specifications for School House— Change of Personnel of Partnership—Contract Unenforceable*. A contract with a board of education for the services of a partnership firm of two architects to make plans and specifications for a school house and to perform the incidental services usual to such employment is a contract for personal services requiring special knowledge, skill and taste, and involving the element of personal confidence, and is unassignable; and a change in the personnel of the firm whereby the services of one of the architects were not available rendered the contract of employment unenforceable against the board of education.

2. SAME—*No Allowance on a Quantum Meruit*. The issues and the matters presented to the district court for judgment, considered, and *held* that the trial court committed no error in making no allowance to plaintiffs on a *quantum meruit*.

Appeal from Seward district court; CHARLES E. VANCE, judge. Opinion filed January 12, 1924. Affirmed.

*C. W. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellants.

*F. O. Rindom,* and *G. L. Light,* both of Liberal, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs, a firm of architects, sued the defendant board of education for professional services pursuant to a contract.

The contract had been made between the defendant board and a firm of architects entitled "Smith, Beattie & Company," composed of two persons, T. C. Smith and R. O. Beattie. The terms of the contract provided that Smith, Beattie & Co., Architects, of Hutchinson, should prepare complete plans and specifications, including all details of construction necessary and desirable, for the complete execution of the design for building, heating, plumbing, ventilating and wiring a high school building which the defendant board had in contemplation and which was to cost $175,000. The architects were obligated to prepare preliminary plans for the defendant's approval and correction, and from which the complete working drawings and specifications were to be elaborated. They were also to correct the estimates of bidders and contractors. The architects were also bound to furnish competent superintendence for the construction of the building, and they were to provide an experienced superintendent. They were also to attend the letting of contracts and give the board their assistance in securing the best contracts obtainable.

For these services the architects were to receive a sum equal to 4 per cent of the cost of the work designed and superintended by them. By a letter contemporaneous with the negotiations leading up to the contract of employment of the architects, Smith, Beattie & Co., wrote to the defendant board, saying, among other things—

"2. That in addition to keeping a competent and experienced Superintendent of Construction on the work constantly, the Architects agree that a member of the firm (the owners choice) shall visit the work at least once a week.

"3. That upon the signing of an agreement, by the Board to employ Smith, Beattie & Co., as architects, this letter shall then become a supplement to and a part of the said agreement."

After the making of the contract of employment between the school board and the architects, considerable time elapsed before the school bond election was held and before satisfactory terms for the sale of the school bonds were secured; and meantime after Smith, Beattie & Co. had furnished a preliminary sketch and preliminary

plans for defendant's approval and correction, this firm of archi-
tects dissolved partnership, R. O. Beattie retiring, and T. C. Smith
succeeded to the business and all its rights and interests. Smith
took in a new partner, Harold T. English, and the firm thereafter
took the business name of Smith & English. The defendant called
on the new firm for some information touching the qualifications of
the new partner, but notwithstanding this was furnished, the school
board elected to have no further dealings with the plaintiffs and
employed another firm of architects to serve it. Hence this lawsuit.

After the facts were set down in the pleadings and admissions of
the parties, judgment was entered thereon in favor of defendant.

Plaintiffs appeal.

The propriety of the judgment depends chiefly on whether the
contract was for the personal services of the partners composing the
firm of Smith, Beattie & Co. The business of an architect has the
dignity of a learned profession. A competent architect is a person
of peculiar skill and taste. He must be a man of culture, of dis-
ciplined mind, artistic eye, and trained hand; he must be able to
visualize the possibilities of beauty and harmony in proportionate
arrangement and construction of brick and stone and cement and
steel; and he must have the art and deftness to set down his ideas
with such precision in specifications and blue prints that contractors
and workmen can readily follow them with fidelity. Moreover, he
must be a man of the highest probity, zealous to see that his designs
are fashioned of good materials and good workmanship, so that the
finished edifice will endure and be worth its cost to his employer.
All these qualifications of a personal nature are involved in any
prudent contract for the services of an architect. And so it seems
that when the school board employed Smith and Beattie they con-
tracted for the special knowledge, skill and taste, the professional
pride of achievement, the wisdom of the counsel, and the personal
probity of both Smith and Beattie. The defendant was to have
"owner's choice" of these two men to visit the work every week;
and the board was not bound to accept the professional services of
any other or others than the two architects composing the original
firm with whom it made the contract. This view is supported by
the authority of analogous cases. When a client has need of an
attorney, if he is wise he employs a lawyer whose legal acumen,
forensic skill, personal probity and prestige as an advocate are well

established, one who enjoys the confidence of courts and juries, and one, also, on whom the client himself implicitly relies. A contract of employment of this character is nonassignable without the consent of the other party thereto. Such is the rule pertaining to the employment of a lawyer (*Sloan v. Williams et al.,* 138 Ill. 43, 12 L. R. A. 496 and note); of an Indian land broker (*Lord v. Wapato Irrigation Co.,* 81 Wash. 561, 581); and even of a printer (*Campbell v. Sumner County,* 64 Kan. 376, 67 Pac. 866); and in general it governs all sorts of contracts of employment where special skill, sagacity, or personal confidence is involved. In 2 R. C. L. 603, it is said:

"Among the instances in which a contract has been considered as involving personal services, special confidence and the like, so as to make it nonassignable, may be mentioned that of an artist or author contracting to paint a picture or write a book, an agreement to sing, to render professional services as a physician or lawyer, or to serve as the agent of an insurance company, and likewise a contract for the support of a parent by a child."

See, also, 5 C. J. 878, 880 *et seq.*

It must therefore be held that the defendant was not liable to plaintiffs for the amount specified in the contract between Smith, Beattie & Co., and the defendant.

A minor contention is made by the appellants, which is that the defendant board was liable on a *quantum meruit,* at least, for the services performed by Smith, Beattie & Co., before the dissolution of the partnership. These services, according to the pleadings, were the drafting of a preliminary sketch and preliminary plans of a building to cost approximately $175,000, which were delivered to defendant and that "Smith, Beattie & Co. held themselves in readiness to further comply with said contract." It does not appear that this point was specifically urged or ruled on in the trial court. At all events no testimony was offered touching the value of such services. Indeed, the plaintiffs' petition contained no allegation concerning the value of such preliminary services.

The record discloses no error which would warrant a reversal of the judgment, and it is therefore affirmed.