No. 42,687

Don H. Alldritt, James H. Bowman and Gerald Byrd, Plaintiffs, v. Kansas Centennial Global Exposition, Inc., a Corporation, Defendant, *Appellee*. Myron E. Russ, Intervener, *Appellant*.

(371 P. 2d 181)

Opinion filed May 5, 1962.

*Kenneth F. Beck*, of Wichita, argued the cause, and *Benjamin Foster*, of Wichita, was with him on the brief for the appellant.

*Tom Harley*, of Wichita, argued the cause, and *Lester Wilkinson* and *George E. Grist*, of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in an insolvency proceeding by a creditor of the defendant corporation from an order of the district court which in substance failed to grant preference to his claim for wages and failed to honor an assignment of wages by another creditor to him.

The action was originally brought in the district court of Sedgwick County, Kansas, by the plaintiffs who were the duly elected officers of the Kansas Centennial Global Exposition, Inc., a Kansas corporation (defendant-appellee), asking the court to appoint a receiver for such corporation, which was alleged to be insolvent, and to wind up its affairs. In due course a receiver was appointed and duly qualified. Thereafter Myron E. Russ (appellant) filed his claim against the receiver for sums due under a written contract of employment, which reads:

"EMPLOYMENT AGREEMENT.

"THIS AGREEMENT, Made and entered into this 20th day of May, 1960, by and between Kansas Centennial Global Exposition, Inc., hereinafter referred to as 'Corporation,' and Myron E. Russ and Charles R. Moran, hereinafter referred to as 'Russ and Moran'.

"WITNESSETH:

"For good and valuable consideration in connection with the organization and promotion of the corporation and its affairs and in accordance with the resolution this day adopted by the Board of Trustees of the corporation, it is hereby mutually agreed between the parties hereto as follows:

"1. The corporation has appointed Myron E. Russ as Executive Director and General Manager of this corporation and its business and activities, and Charles R. Moran as Assistant General Manager, and has agreed to hire and does hereby hire the services of said Myron E. Russ and Charles R. Moran in such capacities to actively direct and manage the affairs, activities and policies of the corporation, subject only to direction by the Board of Trustees, for a term and period of twenty (20) months from May 1, 1960, to December 31, 1961.

"2. That Russ and Moran have heretofore given and rendered valuable services in connection with the organization and promotion of the corporation and its affairs, and they have agreed and do hereby agree to accept such positions and duties as Executive Director and General Manager, and as Assistant General Manager, respectively, and to hereafter give and provide the use of their time and services in the performance of their duties as such officers to the best of their judgment and abilities.

"3. That the compensation to be paid by the corporation to Myron E. Russ and Charles R. Moran for their services during such period shall be and are hereby fixed in the total amounts as follows:

"(a) *Base pay in the amount of $2,500.00 per month,* and

"(b) *Incentive bonus* in an amount equal to 6% of the net income of the corporation based on commercial principles of accounting, but after allowance for depreciation of approximately 25% of capitalized cost of leasehold and real estate improvements. *That Myron E. Russ and Charles R. Moran may divide and allocate this total compensation as between themselves in such manner and proportions as they mutually agree and determine.*

"4. That it is understood and agreed that *any and all obligations incurred or paid by Russ and Moran for and in connection with the organization and promotion of the corporation and its affairs are hereby assumed by the corporation as part of its accounts and obligations.*

"IN WITNESS WHEREOF, the parties have hereunto set their hands as of the day and year first above written.

KANSAS CENTENNIAL GLOBAL EXPOSITION, INC.

By: /s/ Don H. Alldritt, President.<br>/s/ Myron E. Russ,<br>/s/ Charles R. Moran.

Attest:
/s/ Gerald Byrd.
(SEAL)" (Emphasis added.)

The appellant claimed sums due him under the foregoing contract were $14,000. He testified that the compensation for services under the contract was mutually agreed between himself and Moran to be divided two-thirds to himself and one-third to Moran. He claimed the sum due Moran, the assistant general manager, by virtue of an assignment from Moran of all his rights under the contract. This assignment reads:

"ASSIGNMENT.

"In consideration of One Dollar ($1.00), and other good and valuable considerations, the receipt of which is hereby acknowledged, I, Charles R. Moran, do hereby assign, transfer and set over unto Myron E. Russ, all of my right, title and interest in and to one contract dated May 20, 1960, by and between the Kansas Centennial Global Exposition, Inc. and Myron E. Russ and myself.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal at Wichita, Kansas, this 31st day of January, 1961.

/s/ Charles R. Moran."

The trial court after hearing the matter allowed the appellant $9,333.34 as a common claim, thus refusing not only to give preference to the appellant's claim but also refusing to recognize the assignment from Moran to the appellant.

The trial court's refusal to give preference was based upon the proposition that the appellant was *an officer* of the corporation and not entitled to a preference for wages due him under the provisions of G. S. 1949, 44-312, which read:

652

"That whenever a receiver shall be appointed of the estate of any corporation, copartnership, or individual, under the laws of this state, or whenever any corporation, copartnership or individual shall make a general assignment for the benefit of the creditors of such corporation, copartnership, or individual, *the wages due to all laborers or employees other than officers of such corporation, accruing within the six months immediately preceding such appointment of a receiver or such assignment, shall be preferred* to every other debt or claim against such corporation, copartnership, or individual, and shall be paid by the receiver or assignee of such corporation, copartnership or individual from the moneys thereof which shall first come into the hands of such receiver or assignee." (Emphasis added.)

Is the appellant's claim for his personal share of the compensation due under the contract ($9,333.34) entitled to preference under the statutes?

The appellant contends the sums due him under the contract of employment were wages; that he was not an officer of the corporation; and refers to the minutes of the first meeting of the board of directors of the defendant corporation, dated April 26, 1960. He argues that these minutes name the persons who were elected officers and calls our attention to the fact that the appellant's name does not appear therein. He further points to the minutes of the corporation dated May 20, 1960, which state that the corporation agreed to *hire* the services of said Myron E. Russ, subject only to direction by the board of trustees.

Whether the claim of an executive director and general manager for salary owed him against an insolvent corporation is entitled to preference under 44-312, *supra,* has never been passed upon by this court, and is a matter of first impression. Statutes of other states giving preference to claims of employees for wages against an insolvent corporation are so varied that foreign decisions are of little help.

The question posed is whether an executive director and general manager, appointed by the board of trustees, is a "laborer or employee," or an "officer of the corporation." This in turn calls for a construction of the word "officers" as used in 44-312, *supra.*

G. S. 1949, 17-3105, in part provides:

"Every corporation shall have a president, secretary and treasurer. . . . The corporation may have such other officers, agents and factors as may be deemed necessary. . . ."

G. S. 1949, 17-3106, provides:

"The president, secretary, treasurer, and vice-presidents, if any there be, shall be chosen by the directors. All other officers hereinbefore provided for,

shall be chosen in such manner, and shall hold their offices for such terms as may be prescribed by the bylaws, or determined by the board of directors. . . ."

The by-laws of the corporation provide that "(*b*) *The board may appoint such other officers* and agents as it shall deem necessary who shall hold their office for such term and exercise such powers and perform such duties as shall be determined from time to time by the board." (Art. V., § 1 [*b*].) (Emphasis added.)

The by-laws further provide that "The officers of the corporation shall hold office for one year or until their successors are chosen and qualified in their stead, *or for such terms and periods as the board of trustees may agree to determine. Any officer elected or appointed by the board of trustees,* may be removed at any time by the affirmative vote of the majority of the whole board of trustees, *unless his term is otherwise fixed by contract or agreement. . . .*" (Art. V., § 3.) (Emphasis added.)

The resolution of the board of trustees *appointing* the appellant as executive director and general manager of the corporation and its business and activities, and Charles R. Moran as assistant general manager provides, among other things, "That the corporation does agree to hire the services of said Myron E. Russ and Charles R. Moran in such capacities to actively direct and manage the affairs, activities and policies of the corporation, subject only to direction by the board of trustees, for a term and period of 20 months from May 1, 1960 to December 31, 1961."

Here the *agreement* entered into between the corporation and the appellant and Moran recites that they are to actively direct and manage the affairs, activities and policies of the corporation, and are subject only to the direction of the board of trustees. The contract also recites part of the consideration to be "in connection with the organization and promotion of the corporation and its affairs."

The foregoing recital of consideration is not an empty gesture in the contract. The minutes of the board of trustees' first meeting on the 26th day of April, 1960, after listing the trustees present and absent, recite "Myron E. Russ and Charles R. Moran, representatives for the corporation, Rex M. Jennings, accountant and Morris H. Cundiff, attorney, were also present at the meeting." At the same meeting a resolution was passed authorizing and directing the appellant "to form up and secure, from the owner of such West Site, an option to the corporation to take a lease and agreement thereon,

including an option for the extension of such lease and the right to purchase the same."

It further directed him to negotiate with the owners of said tract as to the terms and provisions of such lease and agreement. The second meeting of the board of trustees on the 20th day of May, 1960, indicated the appellant and Moran were present *as representatives of the corporation.*

In paragraph "2" of the contract Russ and Moran were referred to as *officers* of the corporation in connection with their positions and duties as executive director and general manager, and as assistant general manager, respectively.

Upon the foregoing facts we have no hesitance in declaring that the appellant herein was an officer of the corporation in question, and that Moran, as his assistant, was also an officer. We do not think the legislature of the state of Kansas intended to include an executive director and general manager, receiving two-thirds of a $2,500 per month salary ($1,666.66) plus an interest in the profits of the corporation, as a "laborer or employee" of an insolvent corporation, and giving him preference for the salary owed. The appellant herein under the terms of the resolution of the defendant corporation, the contract, and the evidence of the appellant, was only responsible to the board of trustees, and he was not responsible to any officer or other superior of the defendant corporation.

The word "officer" as used in a section of the Securities Exchange Act providing that any profit realized by a beneficial owner, director, or "officer" of a corporation, within six months because of such relationship to the corporation shall inure to the corporation, was held in *Colby v. Klune* [U. S. C. A. 1949], 178 F. 2d 872, to include a corporate employee performing important executive duties of such character that he would be likely, in discharging such duties, to obtain confidential information about the company's affairs that would aid him if he engaged in personal market transactions. The court said it was immaterial how his functions were labeled or defined in the by-laws, or that he did or did not act under the supervision of some other corporate representative.

The Florida Supreme Court distinguished corporate officers and employees in *Flight Equipment & Engineering Corp. v. Shelton* [1958], 103 S. 2d 615, as follows:

"There are various distinctions between corporate officers and employees. For example, an officer holds an office and performs duties created and pre-

scribed by charter or by-law, and the officer is elected either by action of the stockholders or the board of directors at a salary or for compensation fixed by them or by the charter or by-laws.

"On the other hand an employee usually occupies no office; he is generally employed not by action of the stockholders or directors but by the managing officer of the corporation, who also determines the compensation to be paid.

"The officers of a corporation occupy a quasifiduciary relation to the stockholders and the corporation while employees do not. Employees are usually subordinate to and act under control of corporate officers, while the officers exercise the power of management under the policies or directives of the board of directors." (p. 623.)

Under a New York statute giving preference to wages of "employees, operatives and laborers" it was said a general manager of a domestic corporation was not an employee entitled to preference—that the term "employee" did not include every person in the employ of a domestic corporation. It was said the general manager, with reference to the conduct of the business of the corporation, stood as the representative of the company, and would not be termed, in ordinary parlance, an "employee, operative or laborer." (*In Re Directors American Lace & Fancy Paper Wks.* [1898], 51 N. Y. Supp. 818.)

A Missouri statute granting preference to payment of wages of employees of an insolvent corporation was said to protect only such employees as perform assigned tasks requiring no oversight and who are not concerned with the general policy and management of the business. (*Pullis Bros. Iron Co. v. Boemler* [1901], 91 Mo. App. 85.)

In 19 C. J. S., Corporations, § 756, p. 99, the powers of a general manager and managing director were described as follows:

"The general manager of a corporation has general charge, direction, and control of the affairs of the company for the carrying on of which it was incorporated. . . . While it has been said that he may be considered as virtually the corporation itself and his implied powers are coextensive with the general scope of the business of the corporation, yet the ultimate control rests with the board of directors."

The foregoing authorities tend to confirm our construction of 44-312, *supra*, as applied to the facts in this case. Cases cited by the appellant (*Commonwealth v. Christian*, 9 Phila. 556; and *Badger Oil & Gas Co. v. Preston*, 49 Okla. 270, 152 Pac. 383) have been examined and considered, but are not applicable to the facts here presented.

Was Moran's assignment of all his interest in the contract to the appellant valid?

Insofar as the record discloses it is conceded the appellant and Charles R. Moran were entitled to the total sum of $14,000 as compensation due under the terms of the employment agreement when the receiver was appointed, and that these sums due had accrued within six months prior to the appointment of the receiver.

By reason of the oral agreement of the appellant with Moran to take two-thirds of each month's salary, the appellee argues he should only receive two-thirds of the $14,000 claimed, or $9,333.34.

When the appellant filed his claim as an intervener in this action he set up three causes of action in a pleading denominated "Amended Intervener's Petition." His first cause of action was a claim in the amount of $14,000 for wages due under his contract with the defendant corporation. The second cause of action sought damages in the sum of $28,583.33 for breach of the employment agreement. The third cause of action sought recovery of obligations and expenses paid from his own personal funds on behalf of the defendant corporation in the amount of $3,498.11. Insofar as the record here discloses the second and third causes of action have been withdrawn.

The appellee argues the appellant did not consider or treat the assignment from Moran as one for salary owing the assignor, because he sought to recover in his second cause of action damages for breach of contract which would be due the assignor. This action on the part of the appellant is said to indicate his intentions and interpretations of the assignment. The appellee argues the contract in question was of a personal nature; that it was for services to be performed by both the appellant and Moran. In such situation it is said the assignment was invalid because neither the defendant corporation nor its receiver consented to the assignment, citing *Delaware County v. Diebold Safe Co.*, 133 U. S. 473, 33 L. Ed. 674, 10 S. Ct. 399.

We fail to see merit in the appellee's argument.

The assignment heretofore quoted was duly admitted into evidence and by its terms Moran transferred to the appellant all of his right, title and interest in and to the employment contract. This included, among other things, his right to one-third of the unpaid monthly salary. A fact to be noted is that the assignment is dated after the appointment and qualification of the receiver in this action, and it is thus evident the parties were fully aware of the hopelessly insolvent situation of the corporation when the assignment was made. It is clear the parties knew that no further personal services

could be performed by the appellant and Moran for the corporation under the contract after the receiver was appointed and qualified to take charge of the assets of the corporation.

While rights under ordinary contracts are assignable, there are well-recognized exceptions. It is generally held that rights arising out of contracts involving personal services, special confidence and the like, are not assignable by one party without the consent of the other party thereto. (*Campbell v. Sumner County,* 64 Kan. 376, 67 Pac. 866; *Smith & English, Partners, v. Board of Education,* 115 Kan. 155, 222 Pac. 101; *Standard Chautauqua System v. Gift,* 120 Kan. 101, 242 Pac. 145; and *Imperial Refining Co. v. Kanotex Refining Co.* [8th C. C. A. 1928], 29 F. 2d 193.)

It has been held an assignee to whom an account for wages has been assigned may maintain an action on the account, and it is immaterial whether the assignee has paid for the account or not. (*Currant v. Lenger,* 107 Kan. 107, 190 Pac. 432; and see *Krapp v. Eldridge,* 33 Kan. 106, 5 Pac. 372.)

In this state all choses in action, except torts, are assignable. (G. S. 1949, 60-401; *McCrum v. Corby,* 11 Kan. 464, 470; *National Bond & Investment Co. v. Midwest Finance Co.,* 156 Kan. 531, 535, 134 P. 2d 639; and see *Noble v. Hunter,* 2 Kan. App. 538, 43 Pac. 994; and *Railway Co. v. Phelps,* 10 Kan. App. 1, 61 Pac. 672.) Accordingly it has been held that a cause of action for damages for breach of contract is assignable. In *Life Insurance Co. v. Kelso,* 16 Kan. 481, it was said:

"As the cause of action in this case arose out of contract, and is for damages to be paid in money only, we suppose there can be no question as to its assignability." (p. 485.)

While it must be recognized that the assignee of a contract, or rights thereunder, takes no greater interest by the assignment than that of his assignor (*LePorin v. Bank,* 113 Kan. 76, 213 Pac. 650), the assignment in the instant case gave the assignee (appellant) all the rights that the assignor possessed *at the time the assignment became effective.* (*Strong v. Moore,* 75 Kan. 437, 89 Pac. 895.) The written assignment established the intention of Moran to pass all of his rights under the contract to the appellant (*Brewer v. Harris,* 147 Kan. 197, 75 P. 2d 287), and the performance of any further personal services under the contract being impossible, no consent of the corporation or the receiver was necessary to make the assignment valid.

It is apparent from all the facts and circumstances in this case that the only possible rights Moran had in the contract in question at the time of the assignment were (1) a cause of action for damages for breach of contract in which only money could be recovered; and (2) a claim for compensation due and owing him for services when the receiver was appointed. Both could be assigned and were assigned by Moran to the appellant by the written assignment heretofore quoted.

For the reasons heretofore stated the district court should have allowed the appellant's claim in the full amount of $14,000 as a common claim.

Whether the preference given to the payment of wages of laborers and employees of an insolvent corporation from corporate assets in the hands of a receiver under 44-312, *supra,* is a privilege strictly personal to a wage claimant, and one which he alone can exercise, or passes to the assignee with the assignment of such wages, is a question we need not determine on this appeal in view of our decision that Moran, for the reasons heretofore stated, was also an officer of the corporation. (See *Falconio v. Larsen* [1897], 31 Or. 137, 48 Pac. 703, 37 L. R. A. 255; 4 Am. Jur., Assignments, § 116, p. 321; and 19 C. J. S., Corporations, § 1552, pp. 1293 to 1295.)

The judgment of the lower court is modified to allow the appellant's claim in the amount of $14,000 as a common claim. The judgment as modified is affirmed.

ROBB, J., not participating.