(807 P.2d 677)

No. 65,544

SAFELITE GLASS CORPORATION, *Appellant*, v. RICHARD MAX
FULLER A/K/A R. MAX FULLER, *Appellee.*

Opinion filed March 15, 1991.

*Hal D. Meltzer* and *Christopher F. Pickering,* of Turner and Boisseau,
Chartered, of Overland Park, for appellant.

*Wanda M. Temm* and *C. Maxwell Logan,* of Shook, Hardy & Bacon, of
Overland Park, for appellee.

Before LEWIS, P.J., ELLIOTT and RULON, JJ.

RULON, J.: In this contract action, Safelite Glass Corporation
(Safelite), plaintiff, appeals from the district court's entry of sum-
mary judgment for Richard Max Fuller, defendant. Safelite
brought this action, seeking injunctive relief and damages, to
enforce Fuller's covenant not to compete in the replacement auto
glass business. Fuller sold his auto glass business to Lear Siegler,
Inc. (LSI). The asset purchase agreement contained a noncom-
petition clause prohibiting Fuller from competing in the auto glass
business for five years. The Fuller-LSI agreement contemplated
that Fuller would be employed by LSI; Fuller later worked for
LSI as a district manager. LSI subsequently assigned all its assets,
including the Fuller agreement, to Safelite. The district court
found that LSI's assignment of assets to Safelite constituted a
termination of Fuller's employment and voided the noncompe-
tition agreement.

We must decide (1) whether Fuller's covenant not to compete was assignable and (2) whether the district court erred in concluding LSI's transfer of assets and liabilities to Safelite operated as a termination of Fuller's employment, voiding the covenant not to compete. We reverse and remand with directions.

The material facts are as follows:

Fuller was the sole stockholder of the Kansas corporation Magic Glass Company of Kansas, Inc. (Magic). In August 1986, Magic and Fuller, as sellers, entered into an extensive asset purchase agreement with LSI, a Delaware corporation. The agreement provided that LSI would purchase virtually all of Magic and Fuller's operating assets and assume all liabilities, except liabilities specifically excluded by the agreement. The agreement contained a noncompetition clause which provided:

"As part of the consideration paid by LSI hereunder, Seller [Magic] and Fuller agree with LSI that for a term of five (5) years after the Effective Date, Seller and Fuller each will refrain from using the name 'Magic Glass' when it relates to the replacement glass business and will refrain from carrying on, directly or indirectly, a business competitive with the business conducted by Seller (or by LSI as successor), within the State of Kansas or Missouri. To 'carry on a business' shall mean acting as a consultant, employee, sole proprietor, general or limited partner of a partnership, joint venturer, officer, director, shareholder owning more than 10% of the stock of a corporation, or holder of any profit sharing interest or arrangement with any business enterprise or corporation which carries on such a business.

"A. Notwithstanding anything to the contrary herein stated, it is contemplated that Fuller shall become an employee of LSI. In the event that Fuller becomes an employee of LSI or any of its subsidiaries and is thereafter terminated by LSI for a reason other than [the several following reasons] then this noncompete [agreement] shall be null and void. If Fuller voluntarily terminates employment, the noncompete agreement herein contained shall be in effect."

The agreement basically provided that the noncompetition clause would be enforceable if Fuller was terminated by LSI for cause, and the agreement listed several situations which established cause. The agreement also contained a clause stating, *"This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns."* (Emphasis supplied.)

Immediately after the sale, Fuller began working for LSI as a district manager. He earned a yearly salary of $50,000, a yearly

bonus of $25,000 guaranteed for three years, and fringe benefits such as payment of country club dues and car telephone bills.

In 1987, LSI established a corporate division known as the Safelite Division to conduct its auto glass operations. LSI later formed the plaintiff corporation, Safelite, and assigned to it all the assets and obligations of its auto glass business, including the Fuller-LSI agreement. The LSI-Safelite transfer of assets occurred on March 24, 1987. Fuller apparently continued working for the successor corporation, Safelite, at least through May 1989.

On March 23, 1990, Fuller formed a Kansas corporation called Budget Auto Glass, Inc., (Budget) which began business replacing auto glass in Gardner and Chanute, Kansas. Safelite filed this action in June 1990, alleging that Fuller's operation of Budget was a violation of the noncompetition agreement. Safelite filed an application for a temporary injunction on June 18, 1990, asking the district court to restrain Fuller and Budget from operating an auto glass replacement business.

Fuller answered Safelite's petition on June 27, 1990, denying that his operation of Budget violated the noncompetition clause. Fuller asserted five affirmative defenses, alleging that (1) Safelite failed to state a claim for which relief could be granted; (2) Safelite was barred by waiver, estoppel, statute of limitations, laches, failure of consideration, release, or any other affirmative defense appearing during discovery; (3) the noncompetition clause in the Fuller-LSI agreement was a personal contract and nonassignable; (4) Fuller was "constructively terminated from his employment with the plaintiff," and thus the noncompetition clause was void by its own terms; and (5) the noncompetition clause was impermissibly broad and therefore unenforceable.

Later, Fuller filed a motion for summary judgment with an attached supporting memorandum. He argued in his memorandum that the noncompetition clause was a personal contract benefiting only LSI and was not assignable and that, because Safelite was not a party to or an intended beneficiary of the Fuller-LSI agreement, Fuller was entitled to summary judgment as a matter of law. The affidavit attached to his motion stated that LSI had specifically requested that the noncompetition clause in the Fuller-LSI agreement inure to the benefit of Safelite, but that Fuller had not agreed to those terms and had intended the clause to

benefit only LSI. Fuller filed a supplemental memorandum two days before the hearing on his summary judgment motion, in which he admitted the existence of a general assignability clause in the Fuller-LSI agreement, but argued that the noncompetition clause itself contained a restriction against assignability. The supplemental memorandum also asserted that the noncompetition clause became void and unenforceable by its own terms when LSI assigned the contract to Safelite.

On the other hand, Safelite argued that covenants not to compete are generally assignable, that the covenant in this case is a negative covenant, not a personal service contract as argued by Fuller, and that the Fuller-LSI agreement was fully assignable and enforceable by Safelite due to the contract's assignability clause.

On the day the district court granted Fuller summary judgment, Safelite filed a supplemental response, alleging that Fuller's employment was never terminated by LSI or Safelite. Additionally, Safelite argued that Fuller consented to the LSI-Safelite assignment by working for and accepting benefits from Safelite after the assignment. Safelite further argued that because Fuller accepted employment benefits from Safelite, he was estopped from denying that the covenant not to compete benefited Safelite. Finally, Safelite argued that if the court found that Fuller was indeed terminated, a factual issue would remain regarding whether the termination was voluntary or involuntary, and, therefore, summary judgment was not appropriate.

The district court's journal entry, in part, provides:

"The contract between defendant and Lear Siegler, Inc. is not ambiguous and the non-competition clause becomes void upon the transfer of the Safelite division or the Safelite division assets to a third party.

"Defendant ceased to be employed by Lear Seigler [sic], Inc. upon the sale of the business. The assignment of the non-compete agreement in favor of Lear Seigler [sic], Inc. . . . was ineffective as it became void under its terms."

### 1. The Covenant Not to Compete

Safelite contends that Fuller's covenant not to compete is a negative covenant bargained for by LSI, its predecessor, to protect the transferred good will of Fuller's former business and is enforceable by Safelite as LSI's successor. Fuller contends that

the covenant obligated him only to LSI and that the personal nature of the promises and obligations contained in the agreement are enforceable only by LSI.

The rules for the district court's grant of summary judgment and this court's scope of appellate review of that grant are well settled.

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. [Citations omitted.]" *Patterson v. Brouhard,* 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

See K.S.A. 1990 Supp. 60-256(c).

Kansas appellate courts have never addressed the question of whether covenants not to compete can be enforced by a successor purchaser of a business. The parties have pointed out that a split of authority exists in the jurisdictions that have addressed the issue.

The general rule appears to be that valid covenants not to compete are assignable and enforceable by a subsequent purchaser of a business as an incident of the business, whether or not there is an express assignment by the seller. *Nenow v. L.C. Cassidy & Son of Florida, Inc.,* 141 So. 2d 636, 639 (Fla. Dist. App. 1962); *Jenson v. Olson,* 144 Mont. 224, 228, 395 P.2d 465 (1964); *Abramov v. Royal Dallas, Inc.,* 536 S.W.2d 388, 390 (Tex. Civ. App. 1976). See generally Annot., 4 A.L.R. 1078, 22 A.L.R. 754; 6 Am. Jur. 2d, Assignments § 19.

However, there is some authority for the proposition that such covenants are personal contracts and not assignable. Fuller principally relies upon two cases to support his assertion that the covenant involved in this case is nonassignable. *Avenue Z Wet Wash Laundry Co., Inc. v. Yarmush,* 129 Misc. 427, 428, 221 N.Y.S. 506 (N.Y. Sup. Ct. 1927), and *Jeansonne v. El Hindy,* 413 So. 2d 999 (La. App. 1982).

In *Avenue Z,* the New York Supreme Court determined that a covenant not to compete contained in a bilateral employment contract was not assignable. In that case, Yarmush entered into

a contract with the East End Wet Wash Laundry Co., Inc. (East End), agreeing to solicit customers in a certain area for specified compensation. The noncompetition agreement provided that if the relations between the parties were terminated through no act of the laundry company, Yarmush would not set up or conduct similar work for a period of eighteen months. A series of assignments occurred, with East End assigning the business to Ocean Laundry Service, Inc., which then assigned it to the plaintiff, Avenue Z. Yarmush continued in his position under the same terms and conditions with each of the successor purchasers. He then resigned and began performing similar services for one of Avenue Z's competitors. Avenue Z filed suit seeking to restrain Yarmush under the employment contract. The court declined to enforce the covenant, stating:

"This is a bi-lateral contract for personal services and while the services are not extraordinary or unique, the contract calls for the services of the individual defendant and of no other. [Yarmush] did not assent to the substitution of this plaintiff in the place of the corporation with which he had made the contract, and even though he continued in the service of the assignee at the same compensation and did the same work, that in itself does not show such substitution. [Citation omitted.] The general rule is that no bi-lateral contract for personal services can be assigned by either party to it. (1 Williston Cont. 785.) Such a contract involves a personal relation and inasmuch as the performance cannot be delegated, the contract cannot be assigned. [Citations omitted.]" 129 Misc. at 428.

Safelite attempts to distinguish *Avenue* Z on the basis that in this case a sale of the business occurred, while *Avenue* Z dealt with an assignment of the personal services of a salesman. This argument is not convincing, however, because it is obvious that *Avenue* Z involved both a sale of a business *and* an assignment of assets, just like this case.

We believe the distinguishing factor in *Avenue* Z is that the covenant there was contained in an employment contract rather than in a contract for the sale of the business. 129 Misc. at 427. Kansas courts have recognized a distinction between the two. When determining the reasonableness of a covenant, a covenant not to compete contained in an employment contract is generally strictly construed against an employer because the employee is in a weaker bargaining position at the time of contract formation

than is a party selling his or her business. See *H & R Block, Inc. v. Lovelace,* 208 Kan. 538, 544-45, 493 P.2d 205 (1972).

Further, the court's rationale in *Avenue Z* has been questioned by the courts of New York, and it is not clear that New York courts would reach the same result today. See, *e.g., Abalene Pest Control Service, Inc. v. Powell,* 8 App. Div. 2d:734, 735, 187 N.Y.S.2d 381 (1959) (covenant not to compete is freely assignable if the original parties to the agreement so intend). The *Abalene* rule was recently followed by the New York Supreme Court, Appellate Division, in *Special Products Mfg., Inc. v. Douglass,* 159 App. Div. 2d 847, 553 N.Y.S.2d 506 (1990).

*Special Products* is a case very similar to the instant case, except that the covenants there were contained in employment contracts. The defendant Douglass, a "highly and uniquely trained" service representative of hardness-testing machinery, entered into two different employment contracts with the Page-Wilson Corporation. Both contracts contained covenants not to compete. 159 App. Div. 2d at 847.

Page-Wilson sold all its assets and contractual rights to the Canrad Corporation, which operated the business through its wholly owned subsidiary, the plaintiff Special Products. Douglass continued his employment with Special Products for approximately one year, then voluntarily resigned and established a competing business. Special Products sued to enforce the covenant. Douglass claimed *inter alia* that the plaintiff could not enforce the covenant because he entered into the agreement with Page-Wilson and not the plaintiff. The court concluded that Special Products could enforce the covenant, finding the original parties intended the contracts to be assignable as evidenced by a general assignability clause in the first employment contract. The assignability clause relied upon by the *Special Products* court was virtually identical to that in the Fuller-LSI agreement. The second contract Douglass entered into with Page-Wilson did not contain the clause, but the court found no specific restriction on its assignability. Accordingly, the trial court's decision was affirmed. 159 App. Div. 2d at 848-49.

Fuller also relies on *Jeansonne v. El Hindy,* 413 So. 2d 999 to support the proposition that noncompetition agreements are enforceable only by the named obligee. There, the Jeansonnes

sold their grocery store to El Hindy and agreed not to compete within one square mile of their former business. El Hindy sold the business to a third party. The Jeansonnes opened a competing business less than a mile from their old store and, after threats of a lawsuit by the new owner, filed a declaratory judgment action seeking to void the noncompetition clause. The trial court concluded that the Jeansonnes' contract was personal and could not be assigned to the third party. The Louisiana Court of Appeals agreed, finding the agreement benefited El Hindy personally and not the Jeansonnes' former business. The court reasoned that such agreements require strict construction because they restrain services by one individual for the benefit of another, and they should be construed in favor of freedom of competition. 413 So. 2d at 999-1000.

In reaching that result, the court distinguished its opinion in *Louisiana Office Systems, Inc. v. Boudreaux*, 298 So. 2d 341 (La. App.), *remanded on other grounds* 302 So. 2d 37 (La. 1974), *dismissed on other grounds* 309 So. 2d 779 (La. App. 1975). *Louisiana Office Systems* held that a successor corporation could enforce a covenant not to compete contained in an employment agreement. The *Jeansonne* court found the case distinguishable for three reasons: (1) The *Louisiana Office Systems* agreement was assignable by the obligee based on Louisiana statutes, but the covenant not to compete in *Jeansonne* was personal; (2) the corporate successor in *Louisiana Office Systems* was essentially the same entity as the original, where *Jeansonne* involved a third-party successor; and (3) no evidence of an assignment of the noncompetition agreement existed in *Jeansonne* between the contracting party and the successor purchaser, a fact the *Louisiana Office Systems* court found important. 413 So. 2d at 1000-01.

We are convinced the instant case is more like *Louisiana Office Systems* rather than *Jeansonne*. Here the corporate successor, Safelite, is essentially the same entity as the original buyer of Fuller's business, LSI. Further, the record clearly reflects that LSI assigned all its contract rights to Safelite. We are unaware of any Kansas statute which specifically makes covenants not to compete assignable, but Kansas case law has long supported free assignability of contract rights, except those involving personal and confidential relations to which liabilities are attached. See

*Standard Chautauqua System v. Gift,* 120 Kan. 101, 103, 242 Pac. 145 (1926).

The covenant not to compete here does not involve contract rights involving personal and confidential relations to which liabilities are attached. For examples of contracts involving such personal services, see *Standard Chautauqua System,* 120 Kan. 101 (contract to entertain and provide speaker services); *Smith & English, Partners v. Board of Education,* 115 Kan. 155, 157-58, 222 Pac. 101 (1924) (contract for architectural services). Instead, the covenant in this case protects the good will of the business Fuller sold to LSI, and because LSI bargained and paid for the good will of Fuller's business, its successor in interest should be able to enforce the covenant against Fuller. See *Haugen v. Sundseth,* 106 Minn. 129, 133, 118 N.W. 666 (1908); *Saliterman v. Finney,* 361 N.W.2d 175, 177-78 (Minn. App. 1985).

Fuller's argument that the covenant in this case expressly prohibited assignments is not convincing. While the covenant mentions only LSI as obligee, there is no express language in the covenant which appears to limit its assignability. Additionally, the LSI-Safelite transfer of assets is more in the nature of a corporate reorganization rather than a transfer of assets to a third-party successor. Because Fuller continued in substantially the same job after the transfer, the particular factual circumstances here, as well as the contractual language, support the assignability of the covenant. In the absence of express language which limits assignability, covenants not to compete which do not involve personal and confidential relations are assignable and may be enforced by a subsequent purchaser of a business as an incident of the business.

## 2. The Termination

Safelite contends the district court erred in granting Fuller's summary judgment motion based on the finding that LSI's assignment of assets to Safelite constituted a termination of Fuller's employment, thus voiding Fuller's covenant not to compete. Safelite argues that Fuller was not terminated by either LSI or Safelite, but voluntarily resigned in June 1989. Additionally, Safelite contends that the LSI-Safelite assignment did not affect the location or nature of Fuller's employment and that whatever employer-employee relationship existed between Fuller and LSI was

transferred to Safelite. Further, it argues the asset purchase agreement Fuller executed with LSI specifically provides for assignments, and the district court's disregard of the agreement's assignability clause deprives Safelite of the goodwill of Fuller's former business, which LSI bargained and paid for. Fuller argues that termination for any reason not listed in the LSI contract voids his covenant not to compete. Fuller argues he was terminated by LSI for an unlisted reason because LSI no longer existed after the assignment of assets to Safelite.

"[O]rdinarily, a motion for summary judgment should not be sustained so long as discovery is incomplete." *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 274, 777 P.2d 1259 (1989), *cert. denied* 493 U.S. 1036 (1990). Furthermore, "courts should be cautious in granting summary judgment where the issues in the case . . . involve questions of the intent of the parties." *Noller v. General Motors Corp.*, 244 Kan. 612, 617, 772 P.2d 271 (1989).

In this case, discovery was not yet completed when the trial judge determined that LSI's assignment of assets to Safelite terminated Fuller's employment, thus voiding the noncompetition clause. Additionally, the issue here involves questions of what the parties intended the word "terminated" to mean as the term is used in the Fuller-LSI agreement. The record, viewed in the light most favorable to Safelite, demonstrates that the district court erred in granting summary judgment because there were disputed factual issues and because Fuller could not establish that he was entitled to judgment as a matter of law.

Did LSI "terminate" Fuller's employment within the meaning of the Fuller-LSI agreement by assigning its assets to Safelite? Safelite argues that no termination occurred because any employee-employer relationship between Fuller and LSI was transferred to Safelite. Safelite argues that when the word "terminated" is interpreted in light of the whole agreement, it is clear the trial court erred in determining that LSI's assignment of assets effected a not-for-cause termination of Fuller's employment.

This court can construe and determine the legal effect of contracts regardless of the construction adopted by the trial court. *NEA-Goodland v. U.S.D. No. 352*, 13 Kan. App. 2d 558, 562, 775 P.2d 675, *rev. denied* 245 Kan. 785 (1989).

The language of the Fuller-LSI contract quoted above provided that Fuller's covenant would become void if Fuller "is . . . terminated by LSI" for a reason other than those listed in the agreement. Generally, the word "terminate" means "[t]o put an end to; to make to cease; to end." Black's Law Dictionary 1471 (6th ed. 1990). Obviously Fuller's employment relationship *with LSI* terminated when LSI ceased to exist as a corporate entity. However, Safelite argues that LSI and Fuller intended that Fuller's covenant not to compete would be enforceable by LSI's successor in interest, and this intent is demonstrated by the assignability clause in the agreement. Fuller argues that the assignability clause is boilerplate language over which the specific provisions of the noncompetition clause control and that those provisions specifically restrict its assignability. Fuller further argues that, because LSI's sale of assets terminated Fuller's employment and thus voided the noncompetition agreement, Safelite cannot enforce the agreement against him.

If the noncompetition clause became void by its own terms, clearly Safelite cannot enforce the clause against Fuller. See *Kumberg v. Kumberg,* 232 Kan. 692, 699-700, 659 P.2d 823 (1983) (one taking assignment of void contract acquires nothing).

Each party cites several cases from other jurisdictions which determined whether an employee was "terminated" upon the sale of a business when the employee continues the same job with the successor employer. However, the cited cases are not particularly helpful to the resolution of the issue in this case. Most of those cases dealt with termination or severance benefits under employment contracts or ERISA plans and, in most cases, the courts determined that benefits were not available because the claimants never actually became unemployed, thus not coming within the class of persons severance pay is intended to protect. See *Holland v. Burlington Industries, Inc.,* 772 F.2d 1140, 1149 (4th Cir. 1985), *cert. denied* 477 U.S. 903 (1986); *Sly v. P.R. Mallory & Co., Inc.,* 712 F.2d 1209, 1213 (7th Cir. 1983); *Pinto v. Zenith Radio Corp.,* 480 F. Supp. 361, 364 (N.D. Ill. 1979), *aff'd* 618 F.2d 110 (7th Cir. 1980); *Younger v. Thomas Int'l Corp.,* 275 Ark. 327, 331-32, 629 S.W.2d 294 (1982); *Linz v. Champion Int'l Corporation,* 208 Mont. 99, 103, 675 P.2d 979 (1984). But see *Anderson v. Ciba-Geigy Corp.,* 759 F.2d 1518 (11th Cir.),

*cert. denied* 474 U.S. 995 (1985); and *Willets v. Emhart Mfg. Co.,* 152 Conn. 487, 491, 208 A.2d 546 (1965) (sale of division resulted in involuntary termination despite fact plaintiffs accepted position with successor).

Here the district court determined that the covenant not to compete was not assignable; therefore, LSI's transfer of assets to Safelite constituted a termination of Fuller's employment. This holding nullified the assignability clause contained in the Fuller-LSI agreement. The cardinal rule of contract construction requires courts to determine the parties' intent from the four corners of the instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision. *Barnhart v. McKinney,* 235 Kan. 511, 519, 682 P.2d 112 (1984); *Brown v. Lang,* 234 Kan. 610, 615, 675 P.2d 842 (1984). Furthermore, the cardinal rule stated above must be applied prior to the introduction of any extrinsic evidence regarding the intent of the parties. *First Nat'l Bank of Olathe v. Clark,* 226 Kan. 619, 624, 602 P.2d 1299 (1979).

Here, the district court considered the affidavit of Donald Hartig, the former assistant secretary and vice-president/controller of Safelite, in determining that the parties did not intend the covenant to be enforceable by LSI's successor in interest. Hartig's affidavit stated that Safelite had requested a covenant broad enough to be enforceable by Safelite, but that Fuller refused to agree to such a broad provision, so the covenant was drafted to run only to the benefit of LSI. This affidavit was attached to Fuller's supplemental memorandum in support of his motion for summary judgment, which memorandum was filed only two days prior to the hearing on his summary judgment motion. Safelite intended to controvert Hartig's assertion, but the affidavit filed by Safelite, stating that the parties did not agree that the covenant would benefit only LSI, was not notarized. However, Safelite was attempting to secure a notarized affidavit at the time of the summary judgment hearing.

The district court relied upon extrinsic evidence regarding the parties' intent that was introduced only two days before the hearing on Fuller's summary judgment motion. Viewing the record in the light most favorable to Safelite, the district court erred in granting summary judgment on the basis of extrinsic evidence

without giving Safelite an adequate opportunity to controvert Fuller's suggested interpretation of the contract.

Safelite also argues that Fuller is estopped from arguing that he was terminated by LSI by virtue of its transfer of assets to Safelite in 1987 because he continued working for LSI at the same salary and in the same position for three years after the transfer. Fuller contends that the doctrine of equitable estoppel cannot be used offensively by Safelite; that Safelite did not detrimentally rely on any of Fuller's actions; and that the evidence Safelite presents to prove that Fuller's employment continued with Safelite was not presented to the trial court and cannot be considered on appeal.

Fuller is correct in asserting that Safelite cannot demonstrate that his actions induced any detrimental reliance on the part of Safelite. Safelite contends it relied on Fuller's action of accepting the benefits of employment by Safelite and thus made no accommodation or took any action to protect the goodwill of Fuller's former business. We are convinced that Safelite's failure to take any action does not constitute detrimental reliance. See *In re Morgan,* 219 Kan. 136, 137, 546 P.2d 1394 (1976) (one asserting estoppel must show a change in position in reliance on other party's misleading statement).

We conclude Fuller's continued employment by Safelite in the same position and at the same salary did not constitute a termination of employment. As a practical matter, the only effect of the LSI-Safelite transfer of assets was a change in the name of Fuller's employer.

Here, the parties disagreed on the issue of the assignability of the covenant not to compete, and they disagreed on whether the word "terminated" as used in the Fuller-LSI agreement encompassed the change in corporate ownership. Because we have resolved both of these issues in Safelite's favor, a factual issue of whether Fuller voluntarily terminated his employment with Safelite remains.

We reverse the district court's entry of summary judgment in favor of Fuller on the issues of assignability and termination, and we remand the case to the district court for consideration, con-

sistent with the provisions of this opinion, of whether Fuller voluntarily terminated his employment with Safelite.