NOT DESIGNATED FOR PUBLICATION

No. 117,973

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRIAN RUSSELL and BRENT FLANDERS, Trustee of the BRENT EUGENE FLANDERS
and LISA ANNE FLANDERS REVOCABLE FAMILY TRUST,
*Appellants*,

v.

TREANOR INVESTMENTS, L.L.C. and 8TH & NEW HAMPSHIRE, L.L.C.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Douglas District Court; BARBARA KAY HUFF, judge. Opinion filed May 25, 2018.
Affirmed.

*Brian Russell*, of Lawrence, for appellants.

*Todd N. Thompson* and *Sarah E. Warner*, of Thompson Warner, P.A., of Lawrence, for appellee
Treanor Investments, L.L.C.

*Brennan P. Fagan* and *Mark T. Emert*, of Fagan Emert & Davis, L.L.C., of Lawrence, for
appellee 8th & New Hampshire, LLC.

Before ATCHESON, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM: Brian Russell and Brent Flanders, Trustee of the Brent Eugene
Flanders and Lisa Anne Flanders Revocable Family Trust (plaintiffs), filed for
declaratory and injunctive relief against Treanor Investments, L.L.C. (Treanor) and 8th &
New Hampshire, L.L.C. (8th & New Hampshire) (collectively defendants) seeking to
prevent development by Treanor of the property located at 700 New Hampshire Street in

Lawrence, Kansas. The plaintiffs claimed the proposed development violated the covenants running with the land as well as the Operation and Easement Agreement (OEA) governing the property. The defendants counterclaimed for declaratory judgment, claiming that amendment of the OEA was authorized and that such amendment would allow for the proposed development. The parties filed cross-motions for summary judgment and the district court granted the defendants' motion. The plaintiffs appeal. For the reasons stated below, we affirm the district court's ruling.

FACTS

In April 1997, Winter, Inc. (Winter) executed and recorded an OEA relating to the development and operation of two adjacent parcels of land it owned on the east side of New Hampshire Street between 7th and 8th Streets in Lawrence. Winter planned for a Borders Bookstore and a parking lot to be constructed on the first parcel, which was described as the "'Borders Parcel.'" The second parcel, where Winter planned for construction of a retail/office/residential building and parking spaces, was described as the "'Development Parcel.'" In keeping with Winter's stated intent "to develop and operate the respective Parcels in conjunction with each other and as integral parts of a retail shopping, restaurant and office complex (the 'Shopping Center') and in order to effectuate the common use and operation thereof," the OEA set forth certain covenants, agreements, and reciprocal easements relating to the Parcels. Relevant to this appeal, Article III, subsection 3.3(A) of the OEA restricted the surface area of any building subsequently constructed on the Borders Parcel to the existing footprint of the Borders Bookstore. In addition, Article V, subsection 5.1(A)(xiii) of the OEA prohibited the Shopping Center from being occupied or used for "sale of groceries for off-premises consumption as a primary use, except for a gourmet food market." The terms of the OEA "constitute[d] covenants running with the land within the Shopping Center" and were "binding upon any person or entity acquiring any fee, leasehold or other interest in the

2

Shopping Center or any part thereof." The OEA could be amended only by "a written agreement signed by all of the then current Owners."

Article II, subsection 2.4 of the OEA anticipated the future division of either Parcel:

"Subdivisions of Parcel. If any Parcel is hereinafter divided into two (2) or more parcels by separation of Owners, lease, or otherwise, then any resulting parcels shall enjoy and be subject to the benefits and burdens of the easement and all other terms and conditions of this OEA; provided, however, that if any such Owner shall transfer, convey or ground lease its interest in any portion of a Parcel in such a manner as to create multiple Owners of a Parcel, then such multiple Owners shall designate one of their number [to] act on behalf of all such Owners in the performance of the provisions of this OEA. Any such designation shall be in writing, duly executed and acknowledged by all multiple Owners of a Parcel (including the Owner so designated), and recorded with the Recording Office. A copy of such designation shall be sent to each . . . Owner in the Shopping Center. In the absence of any such written, recorded and mailed designation, the Owner of the largest sub-parcel of any such divided Parcel shall be the responsible Owner."

In 2003, Winter sold the entire Development Parcel to 8th & New Hampshire. Thereafter, 8th & New Hampshire built the Hobbs Taylor building on the property, which contained condominium lofts with additional commercial property on the lower floors. In May 2004, 8th & New Hampshire, along with the other Shopping Center Owners, executed and acknowledged a "First Amendment to Operation and Easement Agreement" (First Amendment) and recorded it with the Douglas County Register of Deeds. The First Amendment was created in order to allow development of the Development Parcel differently than originally contemplated by the OEA. The First Amendment provided, in relevant part:

"Article II, Subsection 2.4. Pursuant to the terms of Article II, subsection 2.4 of the OEA, 8th & New Hampshire hereby designates itself as the representative Owner of the Development Parcel, and except as set forth in this section, 8th & New Hampshire shall continue as such designated representative Owner for so long as 8th & New Hampshire shall own any part of the Development Parcel, in whole or in part, and as such 8th & New Hampshire shall be the Owner to act on behalf of all other Owners of the Development Parcel, until such time as 8th & New Hampshire shall convey all of its right, title and interest in and to the Development Parcel to third parties following which time the Owner or Owners of the Development Parcel shall designate a new representative Owner pursuant to the terms of Article II, subsection 2.4 of the OEA. Notwithstanding the foregoing to the contrary, 8th & New Hampshire may resign as such designated representative at any time, even if it owns any part of the Development Parcel, so long as a condominium association, to be known as Hobbs Taylor Lofts Association, Inc., formed as a legal entity for the association of condominium owners for the Development Parcel, becomes the designated representative in place of 8th & New Hampshire."

In March 2006, 8th & New Hampshire sold Condominium Unit 3F in the Hobbs Taylor Lofts to Brent E. Flanders and Lisa A. Flanders, who later conveyed it to a revocable family trust of which they were the named trustees. In June 2010, Brian Russell purchased Condominium Unit 3M in the Hobbs Taylor Lofts.

In May 2015, Treanor purchased the Borders Parcel. Treanor then sought to replace the former Borders Bookstore with a new building that would have a larger footprint than that of the Borders building and would have a grocery store as a tenant. Because this building would violate the size and use restrictions set forth in the OEA, Treanor indicated its intention to amend the OEA, with agreement of 8th & New Hampshire, in order to permit these development changes.

In response, the plaintiffs filed a petition for declaratory and injunctive relief in which they sought to enjoin and restrain 8th & New Hampshire from amending the OEA

4

to allow Treanor to proceed with any development of the Borders Parcel that did not comply with the OEA. In particular, the plaintiffs alleged that 8th & New Hampshire was not entitled to act on behalf of all Hobbs Taylor Owners. The plaintiffs requested a judgment declaring that any valid amendment to the OEA must be signed by the plaintiffs, that Treanor's proposal violated the OEA, and that Treanor was enjoined from proceeding with any development of the Borders Parcel that violated the terms of the existing OEA.

The defendants answered, denying that the plaintiffs were entitled to the requested relief and counterclaimed for a judgment declaring that 8th & New Hampshire and Treanor were the only entities with authority to amend the OEA, that 8th & New Hampshire was authorized to act on behalf of all Hobbs Taylor Owners to amend the OEA, and that the plaintiffs lacked authority to veto any amendment to the OEA.

The parties filed competing motions for summary judgment, agreeing that there were no material facts in dispute. Following oral argument by the parties on their respective motions, the district court denied the plaintiffs' motion for summary judgment and entered judgment in favor of the defendants. The court held the clear and unambiguous language of the OEA and First Amendment provided 8th & New Hampshire with broad authority to amend the OEA as the responsible/representative Owner of the Development Parcel. Specifically, the court reasoned:

> "[8th & New Hampshire] designated itself as the responsible Owner and duly recorded itself as such, putting buyers on notice that [8th & New Hampshire] was the responsible Owner of the parcel for purposes of the OEA. However, even accepting for purposes of argument that the designation was void, OEA provides that 'in the absence of' a valid designation, the Owner of the largest sub-parcel shall be the responsible Owner. Thus, the plain language of Section 2.4 of the OEA indicates that [8th & New Hampshire] is the 'responsible Owner' who will carry out the provisions of the OEA."

5

Although not in response to any argument made by the parties, the district court also addressed whether it was lawful for a developer to retain unilateral authority to amend restrictions in such a way as to impact other property owners. In doing so, the court cited this court's opinion in *North Country Villas Homeowners Ass'n v. Kokenge*, 38 Kan. App. 2d 254, 264-65, 163 P.3d 1247 (2007), where we found a developer's amendments unenforceable because the general power to amend the development declarations did not fairly apprise purchasers of the possibility of drastic changes that would "materially change the character of the development." The district court found the plaintiffs were put on notice as to 8th & New Hampshire's right to amend the OEA but they were not put on notice as to the possibility of the particular change in the building structure and use on the Borders Parcel. The court held, however, that the plaintiffs were not entitled to relief on this basis because the plaintiffs had provided no evidence to show that the proposed changes to the Borders Parcel would materially change the character of the development.

ANALYSIS

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016). Where, as here, no material facts are in dispute and the parties' arguments turn on questions of law, appellate courts exercise de novo review. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). Resolution of the plaintiffs' appeal will necessarily involve interpretation of several provisions of the OEA. Appellate courts apply contract law principles to interpret an operating agreement. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 417, 313 P.3d 808 (2013); see *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016) (appellate court exercises unlimited review over interpretation and legal effect of written instruments). "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear,

6

the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013).

The plaintiffs raise numerous arguments in support of their claim that the district court erred by granting summary judgment in favor of the defendants. These arguments can be combined into the following two issues. First, the plaintiffs argue that the plain language of the OEA does not provide 8th & New Hampshire with authority to amend the OEA without the consent of the plaintiffs and the other Hobbs Taylor Owners. Second, they argue that 8th & New Hampshire cannot amend the OEA to allow for the proposed changes to the Borders Parcel because the changes would materially change the character of the Shopping Center. We address each of these arguments in turn.

1. *Plaintiffs argue they must consent in order for an OEA amendment to be valid*

    a. *Plaintiffs argue Article VI, subsection 6.11 controls*

The plaintiffs rely primarily on Article VI, subsection 6.11 of the OEA as support for their argument that 8th & New Hampshire cannot amend the OEA without their consent. Subsection 6.11 provides that the OEA "may be amended by, and only by, a written agreement signed by all of the then current Owners and shall be effective only when recorded in the Recording Office." The plaintiffs claim that this language requires their participation in the amendment process.

In rejecting this argument, the district court relied on Article II, subsection 2.4 of the OEA and the First Amendment, which designated 8th & New Hampshire as the responsible/representative Owner to act on behalf of the Hobbs Taylor Owners "in the performance of the provisions of [the] OEA." The court found that this language

7

provided 8th & New Hampshire with broad authority, which included the authority to amend the OEA.

The plaintiffs assert the district court's reasoning is flawed. Specifically, the plaintiffs argue the First Amendment is void of any legal effect because 8th & New Hampshire designated itself as the representative owner of the Development Parcel before any subdivision of the Parcel had occurred. Alternatively, the plaintiffs argue that even if the First Amendment is valid, Article VI, subsection 6.11 controls the amendment procedure. The plaintiffs claim that Article VI, subsection 6.11 does not grant 8th & New Hampshire broad authority to amend the OEA; rather, it merely delegates ministerial or representative duties to 8th & New Hampshire.

But the plaintiffs' arguments would have us construe Article VI, subsection 6.11 of the OEA in isolation. To determine the extent of 8th & New Hampshire's authority under the OEA, we are not to construe any provision in isolation but instead are required to ascertain the parties' intent from the four corners of the operating agreement, construing "'all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision.'" *Iron Mound*, 298 Kan. at 418.

The OEA defined the term "Parcel" as "either the Borders Parcel or the Development Parcel" and defined the term "Owner" as "[Winter] and its respective successors and assigns who become owners or lessees of the entirety of any one of the Parcels forming the Shopping Center." The OEA contemplated the possibility that the Parcels would be divided sometime in the future and set forth a procedure as to how such division would be governed. Article II, subsection 2.4 of the OEA provided that if either Parcel were divided, the multiple Owners of the Parcel would designate one of the multiple Owners as a responsible Owner to act on behalf of them all "in the performance of the provisions of this OEA." Although this language suggests that a representative Owner could only be designated by the multiple Owners, the Owners of the Borders

8

Parcel and the Development Parcel later executed the First Amendment, in part, to amend subsection 2.4 of the OEA to designate 8th & New Hampshire as the representative Owner of the Development Parcel. The First Amendment controls any conflict between the OEA and the First Amendment. When the First Amendment was executed, 8th & New Hampshire was the Owner of the entire Development Parcel. Winter was the Owner of the Borders Parcel, subject to a lease with the Lawrence Borders Store. The First Amendment was authorized and executed by each of these entities and was recorded with the Douglas County Register of Deeds. Because the First Amendment was authorized and executed "by all of the then current Owners," it was validly executed in accordance with the OEA's specific amendment procedure as set forth in Article 6, subsection 6.11.

b. *Plaintiffs argue Article II, subsection 2.4 grants only ministerial authority*

The plaintiffs argue that even if 8th & New Hampshire is the representative Owner of the Development Parcel, that designation does not provide it with authority to amend the OEA. The plaintiffs claim that the language in Article II, subsection 2.4 of the OEA authorizing 8th & New Hampshire to "act on behalf of all [Hobbs Taylor] Owners in the performance of the provisions of [the] OEA" only provides the responsible Owner with ministerial authority, not the authority to amend the OEA. The plaintiffs suggest that amendment is not a duty or act required by the OEA but instead an option that is reserved for all Owners. The plaintiffs maintain that Article VI, subsection 6.11 provides the only amendment authority in the OEA.

But the plaintiffs' argument would have us read something into the OEA that does not exist. Neither the OEA nor the First Amendment limits 8th & New Hampshire's authority to only ministerial tasks or otherwise prohibits 8th & New Hampshire from amending the OEA. Rather, Article II, subsection 2.4 of the OEA and the First Amendment gave 8th & New Hampshire authority to "act on behalf of all [Hobbs Taylor] Owners in the performance of the provisions of [the] OEA." Because Article VI,

subsection 6.11 specifically gives Owners the authority to amend the OEA, 8th & New Hampshire has authority, as the responsible/representative Owner, to amend the OEA in the "performance of the provisions of [the] OEA." The plaintiffs' argument also misstates the purpose of Article II, subsection 2.4. This subsection does not create a new amendment procedure; rather, it designates 8th & New Hampshire as the responsible/representative Owner to act on behalf of the Hobbs Taylor Owners in performing the provisions of the OEA, which includes the amendment procedure set forth in Article VI, subsection 6.11.

c. *Plaintiffs argue an agency relationship*

The plaintiffs next assert that 8th & New Hampshire is their agent and, therefore, owes them a duty to act in good faith and loyalty by following the plaintiffs' instructions to enforce the OEA's restrictive covenants on their behalf. But even assuming the existence of an agency relationship between 8th & New Hampshire and the plaintiffs, there is no evidence that 8th & New Hampshire would breach any duty to the plaintiffs simply by amending the OEA in a way that the plaintiffs do not agree with. There is nothing in the OEA or the First Amendment that requires 8th & New Hampshire, as the responsible/representative Owner, to follow the plaintiffs' instructions in carrying out its performance of the OEA's provisions. Such a reading of the OEA would be impractical— as there are at least 40 Hobbs Taylor Owners who might each have different directives— and would defeat the purpose of designating 8th & New Hampshire as the responsible/representative Owner. "'In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided.'" *In re Estate of Einsel*, 304 Kan. 567, 581, 374 P.3d 612 (2016). The plaintiffs are not entitled to relief on this basis.

10

d. *Plaintiffs argue the existence of a dispute in material facts*

The plaintiffs also allege that summary judgment was improper because the district court erroneously relied on the following disputed facts in granting judgment in favor of the defendants:  (1) that 8th and New Hampshire is the owner of the largest subparcel in the Development Parcel and (2) that 38 of 40 Hobbs Taylor Owners did not object to Treanor's development plan. Summary judgment is appropriate when there is no material dispute of fact. *Armstrong*, 305 Kan. at 24. But a disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013). Even if the facts at issue are disputed, they were not material to the district court's ruling. Whether 8th & New Hampshire is the owner of the largest subparcel in the Development Parcel would only be material if no responsible/representative owner had otherwise been designated. As earlier stated, the First Amendment validly designated 8th & New Hampshire as the responsible/representative Owner of the Development Parcel. The number of Hobbs Taylor Owners objecting to Treanor's development plan is also immaterial. Even if all 40 owners had objected, the OEA and the First Amendment allow 8th & New Hampshire, as the responsible/representative Owner, to amend the OEA without consent of any of the owners.

2. *Plaintiffs argue no notice of a material change*

The plaintiffs argue that even if 8th & New Hampshire has the ability to amend the OEA as the representative Owner, it should be barred from doing so in this case because the proposed changes to the Shopping Center constitute material changes of which the plaintiffs were not given particular notice. Relying on the district court's citation to *North Country Villas Homeowners Ass'n*, 38 Kan. App. 2d 254, the plaintiffs

11

contend that nothing in the OEA or the First Amendment put them on notice that 8th & New Hampshire either had the general authority to amend the OEA or the particular authority to materially change the character of the Shopping Center.

The plaintiffs' argument fails for multiple reasons. First, although the plaintiffs suggest that they raised "[t]he issue of the drastic nature of the proposed changes to the character of the block" below, the record reflects that the plaintiffs did not seek judgment on this basis. Rather, the plaintiffs' claims were solely based on whether the OEA provided 8th & New Hampshire with authority to amend it without the plaintiffs' consent. The issue of whether 8th & New Hampshire could amend the OEA to allow for material changes was raised sua sponte by the district court. Indeed, the district court noted:

> "The parties argued only contract law to the Court. While the parties did not rely on any other argument, the Court also considered whether it is appropriate and lawful for a developer to retain unilateral authority to amend restrictions in such a way as to impact other property owners, especially those living in a common interest property such as the owners in the condominiums in the Development Parcel."

Issues not raised before the district court cannot be raised on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), the Supreme Court held that litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. Thereafter, the Supreme Court held that Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). The plaintiffs do not acknowledge their failure to raise this issue below and therefore have not complied with Supreme Court Rule 6.02(a)(5). Since Rule 6.02(a)(5) is to be strictly enforced, the plaintiffs have improperly briefed the issue and we find it waived or abandoned.

12

Even overlooking the plaintiffs' failure to preserve this argument below does not entitle them to relief. The First Amendment was executed in 2004. Based on the above analysis of the OEA and the First Amendment, the plaintiffs had notice of 8th & New Hampshire's general authority to amend the OEA when purchasing their condominiums in 2006 and 2010. Further review of this issue on the merits would only be possible with the development of additional facts regarding the nature of the proposed changes to the Shopping Center that are not in the record. Although the plaintiffs claim that the proposed changes would obviously constitute a material change to the character of the Shopping Center, no facts or evidence on this issue was offered below. The plaintiffs' argument necessarily fails.

CONCLUSION

Under the clear and unambiguous terms of the OEA and the First Amendment, 8th & New Hampshire is the responsible/representative Owner of the Development Parcel, giving it authority to act on behalf of the other Hobbs Taylor Owners "in the performance of the provisions of [the] OEA." Because Article VI, subsection 6.11 specifically gives Owners the authority to amend the OEA, 8th & New Hampshire has authority, as the responsible/representative Owner, to amend the OEA in performing the provisions of the OEA. There is nothing in the OEA or the First Amendment that requires 8th & New Hampshire to follow the plaintiffs' instructions in carrying out its performance of the OEA's provisions. The district court properly granted summary judgment in favor of the defendants.

Affirmed.