IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,973

BRIAN RUSSELL and BRENT FLANDERS, TRUSTEE OF THE BRENT EUGENE FLANDERS and
LISA ANNE FLANDERS REVOCABLE FAMILY TRUST,
*Appellants*,

v.

TREANOR INVESTMENTS L.L.C. and 8th & NEW HAMPSHIRE L.L.C.,
*Appellees.*

SYLLABUS BY THE COURT

1.
The interpretation and legal effect of written instruments are matters of law over which appellate courts exercise unlimited review.

2.
The primary rule for interpreting written contracts is to ascertain the parties' intent. If the contract terms are clear, the parties' intent is to be determined from the contract language without applying rules of construction.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 25, 2018. Appeal from Douglas District Court; BARBARA KAY HUFF, judge. Opinion filed June 26, 2020. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Brian P. Russell*, appellant pro se, argued the cause and was on the briefs.

*Todd N. Thompson*, of Thompson Warner, P.A., of Lawrence, argued the cause, and *Sarah E. Warner*, of the same firm, was with him on the briefs for appellee Treanor Investments, L.L.C.

*Mark T. Emert*, of Fagan Emert & Davis, L.L.C., of Lawrence, argued the cause and *Brennan P. Fagan*, of the same firm, was with him on the briefs for appellee 8th & New Hampshire, LLC.

PER CURIAM:  In this appeal, a condominium owner challenges construction plans for a downtown Lawrence development, claiming the proposed project violates the development's recorded size and use restrictions existing when the owner purchased his unit. He claims his consent is required before those changes occur. The district court and a Court of Appeals panel determined the changes could be made without his approval. See *Russell v. Treanor Investments, L.L.C.*, No. 117,973, 2018 WL 2374094 (Kan. App. 2018) (unpublished opinion). We agree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, the owner of two adjacent properties in Lawrence bounded by 7th, 8th, New Hampshire, and Vermont Streets executed and recorded an "Operation and Easement Agreement." This document was part of the owner's effort to develop the two properties into an integrated retail shopping, restaurant, and office complex. The OEA restricted the building footprints and prohibited either property from being occupied or used for the "sale of groceries for off-premises consumption as a primary use, except for a gourmet food market."

The OEA refers collectively to the two properties as the "Shopping Center." Individually, they are identified as the "Borders Parcel" and the "Development Parcel." The OEA defines "Owner" as the "Declarant and its respective successors and assigns who become owners or lessees of the entirety of any one of the Parcels forming the Shopping Center." It defines "Parcel" as "either the Borders Parcel or the Development Parcel."

2

The OEA supplied instructions for amending it. Its subsection 6.11 states: "This OEA may be amended by, and only by, a written agreement signed by all of the then current Owners and shall be effective only when recorded in the Recording Office." And it contemplated in subsection 2.4 the future divisions of ownership within the original two parcels, as follows:

"2.4 Subdivisions of Parcel. If any Parcel is hereinafter divided into two (2) or more parcels by separation of Owners, lease, or otherwise, then any resulting parcels shall enjoy and be subject to the benefits and burdens of the easement and all other terms and conditions of this OEA; provided, however, that *if any such Owner shall transfer, convey or ground lease its interest in any portion of a Parcel in such a manner as to create multiple Owners of a Parcel, then such multiple Owners shall designate one of their number [to] act on behalf of all such Owners in the performance of the provisions of this OEA.* Any such designation shall be in writing, duly executed and acknowledged by all multiple Owners of a Parcel (including the Owner so designated), and recorded with the Recording Office. . . . *In the absence of any such written, recorded and mailed designation, the Owner of the largest sub-parcel of any such divided Parcel shall be the responsible Owner.*" (Emphases added.)

In 2003, fee ownership of the Development Parcel and Borders Parcel split when defendant 8th & New Hampshire, L.L.C., acquired the Development Parcel. After that, 8th & New Hampshire and the Borders Parcel's Owners executed a "First Amendment to Operation and Easement Agreement."

The First Amendment altered the Development Parcel's original site plan for the required parking spaces and building location, size, and maximum height. It also provided:

"2. Article II, Subsection 2.4. Pursuant to the terms of Article II, subsection 2.4 of the OEA, *8th & New Hampshire hereby designates itself as the representative Owner*

3

*of the Development Parcel, and except as set forth in this section, 8th & New Hampshire*
*shall continue as such designated representative Owner for so long as 8th & New*
*Hampshire shall own any part of the Development Parcel, in whole or in part, and as*
*such 8th & New Hampshire shall be the Owner to act on behalf of all other Owners of the*
*Development Parcel, until such time as 8th & New Hampshire shall convey all of its*
*right, title and interest in and to the Development Parcel to third parties following which*
*time the Owner or Owners of the Development Parcel shall designate a new*
*representative Owner pursuant to the terms of Article II, subsection 2.4 of the OEA.*
Notwithstanding the foregoing to the contrary, 8th & New Hampshire may resign as such
designated representative at any time, even if it owns any part of the Development Parcel,
so long as a condominium association, to be known as Hobbs Taylor Lofts Association,
Inc., formed as a legal entity for the association of condominium owners for the
Development Parcel, becomes the designated representative in place of 8th & New
Hampshire." (Emphasis added.)

The First Amendment enabled 8th & New Hampshire to build a multi-unit building with condominiums and retail space. In 2010, Brian Russell bought a unit in the building.

In 2015, Treanor Investments, L.L.C., acquired the Borders Parcel. Treanor now wants to construct a building that will exceed the OEA's footprint restriction and contain a grocery store. All parties agree these changes require amendments to the OEA.

Russell filed this lawsuit, arguing the OEA could not be amended without condominium owner consent. He sought an injunction barring Treanor's proposed grocery store redevelopment and any attempts to amend the OEA without condominium owner consent. Brent E. Flanders and Lisa A. Flanders, who also owned a unit, originally joined Russell in this lawsuit, but later conveyed their property to a revocable family trust, which did not seek this court's review of the panel's decision. Treanor advises the trust sold its unit in 2018. For simplicity, we refer only to Russell.

4

In the district court, Treanor and 8th & New Hampshire counterclaimed to have the court declare 8th & New Hampshire's role as "responsible Owner" (the term used in the original OEA's subsection 2.4) to permit it to consent to OEA amendments on the condominium owners' behalf. The parties filed competing motions for summary judgment.

The district court agreed with Treanor and 8th & New Hampshire. It concluded both were "Owners" as defined by the OEA because each owned an entire Parcel at one time. It next concluded the First Amendment effectively designated 8th & New Hampshire as the Development Parcel's "responsible Owner." Finally, it determined the responsible Owner's authority to act on behalf of other Development Parcel owners included consenting to OEA amendments. The court gave several reasons for its rulings.

First, it said, the First Amendment conveyed the ability to act on the other owners' behalf, which implied more than merely performing menial tasks. The court held: "A party who is given the authority to act on behalf of all other owners in the performance of the agreement indicates one with greater authority to this court." Any doubt about this, it continued, was eliminated by the First Amendment's language. Next, it reasoned that while OEA subsection 6.11 appeared to support Russell's position in isolation, a different conclusion was apparent when that subsection was viewed in context with subsection 2.4 and the broad authority granted by the First Amendment. The court also considered the First Amendment's timing important because it was recorded shortly after 8th & New Hampshire bought the Development Parcel with intention of building condominiums, which obviously would result in multiple parcel owners. And from this it concluded the First Amendment's purpose was to ensure 8th & New Hampshire could control future restrictions or development.

5

The court also rejected Russell's backup argument that 8th & New Hampshire's right to act on the condominium owners' behalf was a form of agency preventing 8th & New Hampshire from acting against the other owners' wishes. The court noted nothing in the record suggested a majority of the owners objected to the planned amendment or showed that living next to a grocery store was dramatically different from living next to any other commercial development.

Finally, the district court sua sponte concluded 8th & New Hampshire's unilateral amendment authority did not violate the Restatement (Third) of Property: Servitudes § 6.21 (2000), which prohibits amendment power from being exercised in a way that materially changes a development's character, unless the instrument creating that power fairly apprises purchasers this power could be used for that kind of material change. See *North Country Villas Homeowners Ass'n v. Kokenge*, 38 Kan. App. 2d 254, 255-56, 163 P.3d 1247 (2007) (adopting Restatement § 6.21).

Russell timely appealed. A Court of Appeals panel affirmed. *Russell*, 2018 WL 2374094, at * 7. In doing so, the panel agreed with the district court that the OEA and First Amendment are "clear and unambiguous" in establishing 8th & New Hampshire's ability to act on other owners' behalf "in the performance of the provisions of [the] OEA" under the authority imbued in it as the "responsible/representative Owner." 2018 WL 2374094, at *6. And, the panel continued, that authority encompassed amending the OEA since one of its provisions permitted its amendment and the OEA did not limit 8th & New Hampshire's authority to performing only ministerial acts. 2018 WL 2374094, at *5. The panel further held Russell could not avoid summary judgment based on the Restatement (Third) of Property: Servitudes § 6.21. It explained Russell waived this argument because it was not raised in the district court and he failed to acknowledge this in his appellate briefing. See Supreme Court Rule 6.02 (2020 Kan. S. Ct. R. 34). Alternatively, the panel reasoned the summary judgment record was insufficient to show the proposed grocery

store project constituted a material change to the Shopping Center's character. 2018 WL 2374094, at *6.

Russell timely petitioned this court for review, which we granted. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

This appeal presents two principal issues. First, whether the OEA's language gives 8th & New Hampshire authority to amend the OEA without consent from Russell and the other condominium owners. Second, whether 8th & New Hampshire can amend the OEA to allow for the proposed changes to the Borders Parcel because those changes would materially change the Shopping Center's character. Both issues arise in the summary judgment context. Both are resolved by the plain language in the documents and our record on appeal.

*Standard of review*

When the material facts are uncontroverted, an appellate court reviews a decision granting summary judgment de novo. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is

7

sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" [Citation omitted.]" *Trear*, 308 Kan. at 935-36.

To the extent the district court's judgment turned on its interpretation of the OEA and First Amendment, our review is unlimited. 308 Kan. at 936 ("'[T]he interpretation and legal effect of written instruments are matters of law over which appellate courts exercise unlimited review, including whether a written instrument is ambiguous.'"); see also *City of Arkansas City v. Bruton*, 284 Kan. 815, 828, 166 P.3d 992 (2007) (applying rule to interpretation of written easement). The court's "review is 'unaffected by the lower courts' interpretations or rulings.'" *Trear*, 308 Kan. at 936.

"'"The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' If, on the other hand, the court determines that a written contract's language is ambiguous, extrinsic or parol evidence may be considered to construe it. In addition,

"'[a]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. . . .

'. . . But, if the language of a contract is ambiguous and the intent of the parties cannot be ascertained from undisputed extrinsic or parol evidence, summary declaratory judgment is inappropriate.'[Citations omitted.]" 308 Kan. at 936-37.

8

See also *Mobile Acres, Inc. v. Kurata*, 211 Kan. 833, 839-41, 508 P.2d 889 (1973) (if a writing is ambiguous and extrinsic evidence is required to ascertain the parties' intent, summary judgment should not be entered if evidence is contradictory or conflicting, but summary judgment based on erroneous conclusion that writing was unambiguous may be sustained when court can determine parties' intent without resort to extrinsic evidence).

*The OEA's plain language*

To begin with, we hold the language at issue is plain and unambiguous. The OEA's original subsection 2.4 provided that if either Parcel were divided, the multiple Owners of the Parcel would designate a responsible Owner to act on the others' behalf "in the performance of the provisions of this OEA." One such provision authorizes OEA amendments without limitation as to the content of those amendments.

The First Amendment preceded the sale of condominium units to Russell and the others. And the First Amendment was validly authorized and executed by each necessary entity in accordance with the OEA's amendment procedure set forth in subsection 6.11. Through this amendment, the Owners of the Borders Parcel and the Development Parcel agreed to designate 8th & New Hampshire as the representative Owner of the Development Parcel provided for in subsection 2.4. And, once again, nothing in the OEA or the First Amendment limits the authority to amend the OEA. We see no basis from the language in the operative documents supporting Russell's allegation that 8th & New Hampshire, as the responsible Owner, is unable to further amend the OEA to alter the size and use restrictions at issue.

A court may not reform an instrument by rejecting words of clear and definite meaning and substituting others. *Trear*, 308 Kan. 932, Syl. ¶ 3. But that is what Russell asks us to do. He claims 8th & New Hampshire's status as the responsible Owner only

9

permits it to act under the OEA for the other property Owners in a ministerial capacity. And as the panel correctly noted, his arguments would require us to insert language into the agreements that is not there. *Russell*, 2018 WL 2374094, at \*5.

*Material change to the Shopping Center's character*

Under the Restatement (Third) of Property: Servitudes § 6.21, a residential developer may not unilaterally amend a restrictive covenant to "materially change the character of the development . . . unless the declaration fairly apprises purchasers that the power could be used for the kind of change proposed." Russell argues the proposed redevelopment would materially change the existing mixed-use retail and residential development by permitting a previously unauthorized type of retail use and a larger building.

The panel determined not to consider this question on the merits. It held the issue was not properly before it because it was "not raised before the district court," and in that circumstance the appellant must explain why the issue should be considered for the first time on appeal under Rule 6.02. *Russell*, 2018 WL 2374094, at \*6. The cases the panel cited—*Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011), *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), and *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015)—all involve attempts to raise issues on appeal that were not addressed at all in the district court.

But Rule 6.02 does not require an appellant to be the party who raised an issue below in order to claim error on appeal. In this instance, the district court initiated the question sua sponte. And Russell's brief contains a pinpoint reference to the location in the record where the matter was raised and ruled on. This demonstrates Russell is not asking this court to consider the issue for the first time on appeal. His pinpoint citation to

the relevant portion of the district court's summary judgment ruling shows this issue was addressed below and satisfies Rule 6.02(a)(5).

Moving to the merits, Restatement (Third) of Property: Servitudes § 6.21 provides:

"A developer may not exercise a power to amend or modify the declaration in a way that would materially change the character of the development or the burdens on the existing community members unless the declaration fairly apprises purchasers that the power could be used for the kind of change proposed."

In *North Country Villas Homeowners Ass'n*, 38 Kan. App. 2d 254, a Court of Appeals panel adopted that Restatement as Kansas law. It reasoned the Restatement "is consistent with the legal principle that a court should only enforce a restrictive covenant if the purchaser had notice of the restriction." 38 Kan. App. 2d at 263. It also noted Kansas caselaw recognizing restrictive covenants' enforceability in equity against persons who take real property with notice of them. 38 Kan. App. 2d at 263. And it quoted from Restatement § 6.21, comment a, which explains the section's purpose is to protect the legitimate expectations of purchasers, and that "'[t]he character of a common interest community . . . is frequently one of the most important considerations for prospective purchasers.'" 38 Kan. App. 2d at 263.

Russell argues the evidence showing the proposed changes would more than double the size of the Borders Parcel building and result in a use the OEA initially prohibited are enough to establish as a matter of law that the amendments would materially change the character of the development. Alternatively, he argues the evidence raises a genuine issue of material fact for trial. Treanor disagrees, noting Russell did not present any proof the proposed changes would diminish his unit's value or otherwise

11

demonstrate how living next to a grocery store would differ dramatically from living next to a bookstore or any other commercial development.

Parenthetically, we observe that the way the district court and parties set up this issue hampers our analysis. By focusing solely on Restatement § 6.21, the parties bypass questions such as whether Restatement § 6.21 accurately reflects Kansas law; and if it does, whether Restatement § 6.21 even applies to the OEA. But we need not dive into these deeper questions because even if Russell could surmount them, he still did not come forward with evidence to create genuine issues of material fact about whether the proposed project would cause material changes to the Shopping Center.

Based on this record, the only changes in the development's character are the bare details as to what defendants intend to implement: doubling the size of the existing building on the Borders Parcel and engaging in a previously prohibited type of commercial use. But this information alone does not demonstrate these construction plans would bring material change to the basic nature of the present development. And despite Russell's claim that the proposed changes are "'per se' material," they are simply insufficient to support an inference of material change in character that would preclude summary judgment in defendants' favor—even assuming Restatement § 6.21 accurately reflects Kansas law. We hold the district court's grant of summary judgment was appropriate on this basis.

Affirmed.

HENRY GREEN, JR., J., assigned.[1]

STEVE LEBEN, J., assigned.[2]

---

[1] **REPORTER'S NOTE:** Judge Green, of the Kansas Court of Appeals, was appointed to hear case No. 117,973 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

[2] **REPORTER'S NOTE:** Judge Leben, of the Kansas Court of Appeals, was appointed to hear case No. 117,973 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.